UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE AMEIL WILLIAMS,<br><br>            Plaintiff,<br><br>     v.<br><br>WARNER/CHAPPELL MUSIC et al.,<br><br>            Defendants. | Case No.: CV 07-2683 SVW (CTx)<br><br>ORDER GRANTING DEFENDANT WARNER/CHAPPELL MUSIC, INC.'S MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. PROC. 12(B)(6)<br><br>[12] |

I.  INTRODUCTION

Plaintiff, Bruce Ameil Williams ("Plaintiff" or "Williams"), acting pro se, brings this action for copyright infringement against Defendant Warner/Chappell Music ("Defendant" or "Warner/Chappell").[1] Plaintiff claims that Defendants have infringed his copyright in the word "Afrimerican." Defendants now bring a motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the case, arguing that Plaintiff cannot allege a valid copyright in the single word,

---

[1] There are a number of defendants listed in the complaint, but it appears that Plaintiff acknowledges that the Court does not have personal jurisdiction over the majority of the defendants "and instead seeks to have one defendant - Warner/Chappell - held liable for the full amount sought." (Def. Motion for Summary Judgment, 1. n.1. See also Pltf. Compl. ¶¶ 50-52.)

and that the Lanham Act violations included in the complaint are barred by Supreme Court precedent.

## II. FACTUAL BACKGROUND

Plaintiff filed his complaint in this action on April 27, 2007. Plaintiff is a California resident who claims to have coined and copyrighted the term "Afrimerican," a word used to describe the ethnic group commonly known as African-Americans. (Pltf. Compl. ¶¶ 4, 15.) The work that Plaintiff claims a copyright in is simply the word and the definition of that word. Id. at Ex. 1. Plaintiff alleges that he has taken considerable efforts to popularize the term so that it may surpass "African-American" and "Black" as the descriptor for the ethnic group. Id. at Ex. 2.

Plaintiff claims that Defendant Warner/Chappell infringed on his copyright by using the term "Afrimerican" without his consent. Id. at ¶ 15. Plaintiff argues that a song written and composed by defendants Terry Pardini and the Invisible Man is based upon Plaintiff's work. Id. at ¶ 16.[2] The song, released on Warner/Chappell Records, uses term "Afrimerican" the title to the track, an instrumental number described as "bouncy calypso inspired funky garage." Id. at Ex. 6. Based on the complaint, the gravamen of Plaintiff's argument is that Defendant is liable for copyright infringement as the result of distributing a song with a title using Afrimerican. Id. at ¶¶ 14-17. Apart from the cause of action based

---

[2] Perhaps more accurately, Plaintiff does not claim that Defendant's work is necessarily "based" on his work, simply that the title of the work uses the term "Afrimerican."

on copyright infringement, Plaintiff also argues that the distribution of the song outside the United States represents a conspiracy on the part of defendants to commit criminal copyright infringement. Id. at ¶¶ 18-36. Plaintiff finally alleges that, through the use of Plaintiff's alleged copyright, Defendants have also violated the Lanham Act. Id. at ¶¶ 37-48.

As relief, Plaintiff seeks to recover $50,000,000 in exemplary damages, along with compensatory damages, profits, injunctive relief, destruction of infringing articles, and attorney fees. Id. at ¶¶ 49-69.

### III. ANALYSIS

Federal Rule of Civil Procedure 12(b)(6) permits a party to move for dismissal of an action where the complaint fails to state a claim upon which relief can be granted. The Supreme Court recently revised the standard used to review motions to dismiss in Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955 (2007). In Twombly, the Supreme Court stated that "[f]actual allegations [of the Complaint] must be enough to raise a right to relief above a speculative level." 127 S. Ct. at 1965. A plaintiff may not obtain relief simply by attaching "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. The newly adopted standard for a motion to dismiss requires the plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." Id. at 1974.

Consequently, a Rule 12(b)(6) motion should be granted where the plaintiffs have failed to "nudge[] their claims across the line from

conceivable to plausible." Id. Similarly, "[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." <u>Balistreri v. Pacific Police Dep't.</u>, 901 F.2d 696, 699 (9th Cir. 1990).

Although a court "must accept as true all factual allegations in the complaint." <u>Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit</u>, 507 U.S. 163, 164 (1993), it is also true that a "court need not accept as true unreasonable inferences or conclusory legal allegations." <u>RFD Media Ltd. V. Fox Broad. Co.</u>, 372 F. Supp. 2d 556, 561 (C.D. Cal. 2005) (citing <u>W. Mining Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir. 1981), *cert. denied*, 454 U.S. 1031 (1981)). With these guiding principles in mind, the Court now turns to an analysis of Plaintiff's claim.

**A. Plaintiff's Claim of Copyright in "Afrimerican"**

In order prove a claim of copyright infringement, a plaintiff must demonstrate two distinct elements: "(1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original." <u>Feist Publ'ns, Inc. v. Rural Tel. Serv., Inc.</u>, 499 U.S. 340, 360 (1991). In this case, Plaintiff alleges that Defendant has infringed his copyright under 17 U.S.C. § 501(a) and accordingly must set forth allegations relating to this legal standard. Defendant maintains that Plaintiff cannot assert a valid copyright in the single word "Afrimerican," and, therefore, all of his claims based on copyright infringement must fall as a matter of law.

1. *Ownership of a Valid Copyright*

Plaintiff asserts that he is the owner of a copyright in the word "Afrimerican," which is a term that refers to the ethnic group popularly known as African-Americans. (Pltf. Compl. at Ex. 2.) The copyright Plaintiff allegedly owns the rights to includes the term and the definition of that term. Id. In order to maintain a claim for infringement, Plaintiff must own a *legally valid* copyright in that term.

Courts have repeatedly found that it is "inconceivable that anyone could copyright a single word or a commonly used short phrase, in any language." Signo Trading Int'l. Ltd. V. Gordon, 535 F. Supp. 362, 365 (N.D. Cal. 1981). As the First Circuit Court of Appeals has stated, "[i]t is axiomatic that copyright law denies protection to 'fragmentary words and phrases' and to 'forms of expression dictated solely at functional considerations' on the grounds that these materials do not exhibit the minimal level of creativity necessary to warrant copyright protection." CMM Cable Rep, Inc. v. Ocean Coast Properties, Inc., 97 F.3d 1504, 1519 (1st Cir. 1996) (quoting 1 NIMMER, 2.01[B], at 2-13-18). This is a well-established principle, as single words and phrases "do not exhibit the minimal creativity required for copyright protection." Arica Inst., Inc. v. Palmer, 970 F.2d 1067, 1072 (2d Cir. 1992). See also Fryer v. Brown, 2005 WL 1871112, at *2 (W.D. Wash. Aug. 2, 2005) (copyright law does not protect a plaintiff's creation of the word "autoupolstrykits."). Such court interpretations are in line with the Copyright Office's own interpretation of non-copyrightable in these instances. The

Copyright Office maintains that "[w]ords and short phrases such as names, titles, and slogans" are not copyrightable. 37 C.F.R. § 202.1(a) (1994).[3]

The amount of work an individual places into their creation is deemed irrelevant for purposes of determining the validity of one's copyright in his work. Even if an individual exerts effort in creating a new word, that does not grant copyrightability. See, e.g., Bird v. Parsons, 289 F.3d 865, 882 (6th Cir. 2002) ("Bird's contention that the word 'financia' is not found in any dictionary, but instead 'developed as a noun in Late Latin from a Middle-German root word' does not alter" the court's determination that the word is not subject to copyright protection).

Plaintiff asserts a copyright in the term Afrimerican and its definition. On its face, the term is simply a shortened version of African-American, excluding the "can-A." Considering the overwhelming precedent and Copyright Office regulations stating that short words and phrases are not subject to copyright protection, this term lacks the necessary creativity necessary to obtain a valid copyright. Allowing Plaintiff to obtain a copyright over this term would be akin to allowing an individual to copyright a contraction on the basis that he formed a new word. Certainly an individual cannot obtain a copyright for "don't" or "can't" simply because he brings

---

[3] Although Copyright Office regulations are not binding on the court, it is recognized that they should be appropriately considered by the court. See Ets Hokin v. Skyy Spirits, Inc., 225 F.3d 1068, 1081 n.14 (9th Cir. 2000) (citing 1 NIMMER § 2.08[G][2], at 2-136). See also Kitchens of Sara Lee, Inc. v. Nifty Foods Corp., 266 F.2d 541, 544 (2d Cir. 1959) (regulations "[do] not have the force of statute" but are "a fair summary of the law.").

6

two words together into one.[4] There is not a modicum of creativity in the Plaintiff's term that would warrant copyright protection.[5]

Although one court has suggested that there *may* exist copyright protection in a single word where that word is sufficiently creative and unique, such as "supercalifragilisticexpialidocious,"[6] Plaintiff simply took African-American and developed the word Afrimerican. The word serves, at its core, a functional or descriptive purpose for identifying a group of people. He may have the credit for popularizing the term in cultural vernacular, but he cannot obtain a copyright for those actions. Indeed, granting Plaintiff a copyright in the term would undermine his very efforts to popularize the term. If it were copyrighted, the result would be that the word could no longer spread through our culture for fear of incurring Plaintiff's

---

[4] Perhaps more appropriate are shortened names combining names for geographical areas in a city; for example South Houston in New York, which is commonly referred to as "SoHo." From a policy perspective, allowing a plaintiff to obtain a copyright in such terms would limit the use of vocabulary to describe the surrounding world.

[5] Plaintiff alleges the infringement of his copyright by the Defendant in a work that was released overseas. In Los Angeles News Serv. V. Reuters Television Int'l, Ltd, the Ninth Circuit noted that "[i]t is settled law that the Copyright Act does not apply extraterritorially . . . . For the act to apply, at least one alleged infringement must be completed entirely within the United States." 149 F.3d 987, 990 (9th Cir. 1998) (reaffirming Subafilms Ltd. V. MGM Pathe Communications Co., 24 F.3d 1088 (9th Cir. 1995)). In Los Angeles News Serv., the Ninth Circuit determined that, unlike in Subafilms, there were various acts of infringement that did occur within the United States. Id. at 991.

In his complaint, Plaintiff only makes a basic allegation that acts of infringement occurred in California. Pltf. Compl. ¶17. Since Defendants do not seriously challenge that allegation, at this point in the litigation, the Court will assume there were actions that took place in California.

[6] Life Music, Inc. v. Wonderland Music Co., 241 F. Supp. 653, 656 (S.D.N.Y. 1965). It is worth noting again, however, that the court merely suggested copyright *may* be available in this instance. This is a word that is dramatically more fanciful than plaintiffs and perhaps contains a sufficient degree of creativity.

wrath in the form of a copyright infringement action.[7] People using the term would infringe the copyright by taking the very actions that Plaintiff wants – use of the word.

Plaintiff admits that the issuance of a copyright registration for Afrimerican is "anomalous, and contrary to customary interpretation of Copyright law." (Pltf. Opp. 4.) Plaintiff instead attempts to argue that the issuance of the copyright registration, although anomalous, still creates a copyright in the work. This argument, however, is simply not in accord with Ninth Circuit interpretations of copyright law. The registration of a copyright by the Copyright Office simply creates prima facie evidence of copyrightability, evidence that can be rebutted by the defendant demonstrating why the work is not copyrightable. See, e.g., Alamuhammed v. Lee, 202 F.3d 1227, 1236 (9th Cir. 2000) ("'[t]he presumptive validity of the certificate may be rebutted and defeated'") (quoting S.O.S., Inc. v. Payday, Inc., 886 F.2d 1081, 1086 (9th Cir. 1989)); Creeks U.S.A. Corp. v. Roger Gimbel Accessories 1989 WL 168063, *1 (C.D. Cal. Nov. 14, 1989 ) (noting "[r]egistration of a copyright does not create an irrebuttable presumption of validity.")). The Copyright Act also provides for this presumption by stating that a certificate of registration "made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright . . . ." 17 U.S.C. § 410(c). Plaintiff appears to admit that he has not published the work, which would make the presumption inapplicable

---

[7] Those fears are realized in this case as Plaintiff is asking for $50,000,000 in exemplary damages in addition to profits, compensatory damages, and an injunction to prevent use of the word itself.

8

under § 410(c). (See Pltf. Opp. 5.) Even assuming, however, that there was some form of publication alleged, Defendant Warner/Chappell has overcome any prima facie evidence of copyrightability by demonstrating that Plaintiff cannot copyright the term Afrimerican.[8]

Accordingly, the Court finds that Plaintiff finds no valid copyright in the term Afrimerican, and any prima facie presumption of validity has been rebutted by Defendant.[9]

### B.  Deceptive Trade and Unfair Business Practices Claims Under Lanham Act

Plaintiff's complaint also sets forth a cause of action based on deceptive trade practices under the Lanham Act, § 43 (a)(1)(A). It appears, though it is a bit unclear, that the alleged "unfair competition" claim is also based on the Lanham Act, but the complaint merely references the definitional section of the Act without any specific reference to an applicable section.

The Lanham Act was passed in 1946 to stand as the nation's trademark laws. See 15 U.S.C. § 1051. The Lanham Act prevents, among other activities, false designations of origins, false descriptions and dilution. § 43(a), 15 U.S.C. § 1125.[10] In Dastar

---

[8] Plaintiff also argues that the Illinois rule of estoppel by deed validates his copyright. Illinois law, however, is not applicable to federal copyright claims and is not considered.

[9] In accordance with the lack of a valid copyright, a number of Plaintiff's other claims necessarily fall as well. Without a copyright that grants rights, the second cause of action (criminal copyright infringement) and the third cause of action (conspiracy against rights) necessarily fail as they are based on an assertion of the underlying copyright.

[10] Plaintiff does not appear, from the allegations set forth in the complaint, to allege any trademark in the word Afrimerican, only his

Corp. v. Twentieth Century Fox Film Corp., the Supreme Court stated that the phrase "origin of goods" as presented in the Lanham Act is read "in accordance with the Act's common-law foundations (which were *not* designed to protect originality or creativity), and in light of the copyright and patent laws (which *were*), [and concludes] that the phrase refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." 539 U.S. 23, 37 (2003). Section 43(a) of the Lanham Act, in particular, is directed at preventing consumer confusion involved with a product, allowing individuals to make easier purchasing decisions and allowing for reputational awards. Id. at 34. In Dastar, the plaintiff brought an action under Section 43(a) for a work that was now in the public domain and therefore no longer received protection under copyright law. The Court found that the plaintiff could not use the Lanham Act as a way to bring these claims based on originality and similarity of the works. Id. at 37.

In this case, Plaintiff has not alleged in his complaint that he holds a trademark in the term Afrimerican. As the Supreme Court held in Dastar, Section 43(a) applies to goods that are offered for sale, not to the originality of works or the creativity of expression. See Id. Plaintiff has alleged no creation of a product or that the product is protectable under this analysis. With respect to the unfair business practice claim alleged under the Lanham Act, the Supreme Court in Dastar also stated that "[b]ecause of its inherently

---

copyright, which makes his claims under the Lanham Act somewhat anomalous, since the Lanham Act is considered a trademark protection statute.

10

limited wording, § 43(a) can never be a federal 'codification' of the overall law of 'unfair competition,' but can only apply to certain unfair trade practices prohibited by its text." Id. at 29.

Accordingly, the Lanham Act cannot be used to protect whatever rights Plaintiff may have in his creation. The rights are more appropriately asserted as copyright claims, which, as discussed above, cannot stand. These claims are therefore dismissed.

### C. Cyberconspiracy Claim

In a brief statement in Paragraph 42 of his Complaint, Plaintiff alleges that Defendants are liable under the cyberpiracy prevention provision of Section 43(d) of the Lanham Act. See 17 U.S.C. § 1125(d). A claim of cyberpiracy requires a plaintiff allege three elements: (1) ownership of a trademark; (2) an intent in bad faith by the defendant to profit from use of plaintiff's alleged trademark; and (3) registration, traffic, or use of a domain name by the defendant that is confusingly similar to the plaintiff's trademark. Id. Plaintiff fails to allege any of these necessary elements in his complaint. Under the standard for a motion to dismiss, there is simply not enough in the complaint to "nudge" this claim from conceivable to plausible. Twombly, 127 S. Ct. at 1974. Accordingly, due to a complete lack of allegations relating to this claim, it is dismissed.

///

///

### IV. CONCLUSION

As Plaintiff cannot assert a valid copyright in the term Afrimerican, his claim for copyright infringement should be dismissed. Since Plaintiff has failed to allege any ownership of a trademark and does not hold the underlying copyright to his work, Plaintiff's remaining Lanham Act claims must also be dismissed. Accordingly, Defendant's motion is GRANTED and the claim is dismissed with prejudice.

**IT SO ORDERED.**

DATED: 9/26/07

STEPHEN V. WILSON
UNITED STATES DISTRICT JUDGE